**IN RE E.H.**

[227 N.C. App. 525 (2013)]

---

IN RE E.H., N.H.

No. COA13-273

Filed 4 June 2013

1. **Appeal and Error—appealability—jurisdiction—child abuse and neglect**

     The Court of Appeals denied Buncombe County Department of Social Services's motion to dismiss the appeal in a child abuse and neglect case for lack of jurisdiction. The trial court had jurisdiction to consider its own jurisdiction. Further, the trial court's order denying the guardian *ad litem's* motion under N.C.G.S. § 1A-1, Rule 60(b) was appealable under both N.C.G.S. § 7B-1001(a)(1) and (2).

2. **Civil Procedure—juvenile petitions—voluntary dismissal—Rule 60(b)**

     For purposes of a juvenile petition, a voluntary dismissal is a "proceeding" that may be the subject of a motion under N.C.G.S. § 1A-1, Rule 60(b). Thus, the trial court correctly concluded in a child abuse and neglect case that a Rule 60(b) motion was the proper avenue to challenge Buncombe County Department of Social Services's voluntary dismissal.

3. **Civil Procedure—juvenile petitions—Rule 60—voluntary dismissal without prejudice—Rule 41**

     The trial court did not err by denying a guardian *ad litem's*

**IN RE E.H.**

[227 N.C. App. 525 (2013)]

N.C.G.S. § 1A-1, Rule 60(b) motion for relief from the voluntary dismissal without prejudice filed by Buncombe County Department of Social Services (BCDSS) purporting to dismiss the juvenile petitions. BCDSS had the legal authority prior to an adjudicatory hearing to voluntarily dismiss the petition it had filed. The application of N.C.G.S. § 1A-1, Rule 41(a)(1)(i) to the adjudication of abuse, neglect, and dependency advances the purposes of the Juvenile Code and is not contrary to any provisions of the Code.

Appeal by Guardian Ad Litem from Order entered 25 October 2012 by Judge Ward D. Scott in District Court, Buncombe County. Heard in the Court of Appeals 8 May 2013.

*Hanna Frost Honeycutt, for appellee Buncombe County Department of Social Services.*

*Richard Croutharmel, for appellee respondent-mother.*

*Wyrick Robbins Yates & Ponton LLP by Tobias S. Hampson, for appellee respondent-father.*

*Michael N. Tousey, for appellant Guardian ad Litem and the Juveniles.*

STROUD, Judge.

The Guardian ad Litem (GAL), representing the juveniles E.H. ("Eliot") and N.H. ("Neil"),[1] appeals from an order entered 25 October 2012 denying his Rule 60(b) motion for relief from the voluntary dismissal without prejudice filed by Buncombe County Department of Social Services (BCDSS) purporting to dismiss the juvenile petitions as to Eliot and Neil. For the following reasons, we affirm the trial court's order.

## I. Background

On 24 May 2012, BCDSS filed juvenile petitions alleging that respondent-father had sexually abused Eliot and Neil. Before a hearing to adjudicate the allegations was held, BCDSS voluntarily dismissed the juvenile petitions without prejudice on 13 August 2012. On 24 August 2012, the GAL appointed to represent the juveniles moved to schedule

---

1. To protect the privacy of the juveniles and for ease of reading, we will refer to them by pseudonym.

**IN RE E.H.**

[227 N.C. App. 525 (2013)]

an adjudication and disposition hearing, arguing that BCDSS was not authorized to dismiss the petitions. The trial court held a hearing on the motion and determined that the proper avenue to challenge the voluntary dismissal was a motion under N.C. Gen. Stat. § 1A-1, Rule 60(b) (2011), and asked the GAL to re-file his motion under that rule. The GAL filed his motion for relief from the dismissal under Rule 60(b) on 25 October 2012. The trial court denied the motion by order entered 7 December 2012. In that order, the trial court concluded that BCDSS had the authority to voluntarily dismiss juvenile petitions and deemed the dismissal effective. The GAL filed notice of appeal from the order on 18 December 2012.

## II. Appellate Jurisdiction and Motion to Dismiss Appeal

**[1]** First, we must address the question of whether we have jurisdiction to consider the present appeal. BCDSS has filed a motion to dismiss the appeal with this Court. BCDSS argues that we do not have jurisdiction because the voluntary dismissal deprived the trial court of jurisdiction to enter its order denying the GAL's Rule 60(b) motion. BCDSS also argues that the GAL is not entitled to appeal from this order under N.C. Gen. Stat. § 7B-1001(a)(1) or (2).

> When the record clearly shows that subject matter jurisdiction is lacking, the Court will take notice and dismiss the action *ex mero motu*. Every court necessarily has the inherent judicial power to inquire into, hear and determine questions of its own jurisdiction, whether of law or fact, the decision of which is necessary to determine the questions of its jurisdiction.

*Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 86 (1986) (citations omitted).

The question raised by the GAL's Rule 60(b) motion was whether the voluntary dismissal was void and the juvenile proceeding continued or whether BCDSS's voluntary dismissal was effective, thereby ending the jurisdiction of the trial court. *See In re O.S.*, 175 N.C. App. 745, 749, 625 S.E.2d 606, 609 (2006) ("Without the juvenile petition, the trial court no longer had any jurisdiction over the case."). The trial court had jurisdiction to consider its own jurisdiction; therefore, we are not required to dismiss the appeal on that ground. *Lemmerman*, 318 N.C. at 580, 350 S.E.2d at 86; *cf. McClure v. County of Jackson*, 185 N.C. App. 462, 469, 648 S.E.2d 546, 550 (2007) ("This Court is required to dismiss an appeal *ex mero motu* when it determines the lower court was without jurisdiction to decide the issues." (citation omitted)).

Second, we hold that the trial court's order denying the GAL's motion under Rule 60(b) is appealable under both N.C. Gen. Stat. § 7B-1001(a)(1) and (2). That statute permits appeal from "[a]ny order finding absence of jurisdiction," and "[a]ny order, including the involuntary dismissal of a petition, which in effect determines the action and prevents a judgment from which appeal might be taken." N.C. Gen. Stat. § 7B-1001(a)(1), (2)(2011). The order at issue here determined that BCDSS's voluntary dismissal of the juvenile petition was effective, thus depriving the trial court of jurisdiction, and preventing a final judgment on the merits "from which appeal might be taken." *Id.* Therefore, the order is appealable.

The GAL timely filed written notice of appeal from the trial court's order denying its Rule 60(b) motion. BCDSS does not argue that the order is interlocutory as there are no remaining claims or parties to the action. Therefore, we properly have jurisdiction to consider the merits of the appeal and deny the motion to dismiss.

### III. Rule 60(b) Motion

**[2]** We must next consider whether a Rule 60(b) motion is the proper avenue to "reopen a case" after a voluntary dismissal. This Court has previously answered that question both in the affirmative, *Carter v. Clowers*, 102 N.C. App. 247, 252, 401 S.E.2d 662, 665 (1991) ("[W]e believe G.S. § 1A-1, Rule 60(b), Relief from Judgment or Order, provides a permissible method to reopen this case."), and the negative, *Troy v. Tucker*, 126 N.C. App. 213, 215, 484 S.E.2d 98, 99 (1997) ("[R]elief from a voluntary dismissal is not available pursuant to Rule 60(b), because no relief is sought from an order, judgment, or proceeding as contemplated by the Rule."). One difference between *Carter* and *Troy* lies in whether the voluntary dismissal was taken with prejudice, as in *Carter*, or without prejudice, as in *Troy*. *Carter*, 102 N.C. App. at 250, 401 S.E.2d at 664; *Troy*, 126 N.C. App. at 215, 484 S.E.2d at 99. Moreover, in *Robinson v. General Mills Restaurants, Inc.*, we questioned whether a voluntary dismissal without prejudice could be subject to a Rule 60(b) motion and implied that it could not as it was not a final judgment. 110 N.C. App. 633, 636-37, 430 S.E.2d 696, 698 (1993), *disc. rev. dismissed as improvidently granted*, 335 N.C. 763, 440 S.E.2d 274 (1994). In *Bradley v. Bradley*, however, we applied the rule from Carter despite the fact that the dismissal was without prejudice. *Bradley v. Bradley*, 206 N.C. App. 249, 252, 254, 697 S.E.2d 422, 425, 426 (2010). In *Bradley*, we specifically approved of the use of a Rule 60(b) motion to challenge whether a party had the authority to voluntarily dismiss an action. *Id.* at 254, 697 S.E.2d at 426.

*Bradley, Troy,* and *Robinson* are to some extent conflicting. One of the reasons for the apparent conflict is likely the different types of cases and procedural issues presented in each case. We need not resolve this conflict here, however. "[T]he Rules of Civil Procedure apply only when they do not conflict with the Juvenile Code and only to the extent that the Rules advance the purposes of the legislature as expressed in the Juvenile Code." *In re L.O.K.,* 174 N.C. App. 426, 431, 621 S.E.2d 236, 240 (2005) (citations omitted). *Bradley, Troy,* and *Robinson* are not juvenile cases, and juvenile cases do exhibit legal and procedural differences from other types of civil proceedings in which there are parties with clearly opposing interests and each party may assert various claims and counterclaims. The purpose of a proceeding dealing with the abuse, neglect, or dependency of a juvenile is entirely different from the interests involved in a case in which a plaintiff is seeking to obtain a monetary judgment against a defendant to remedy some sort of wrong. Our legislature has declared the purposes of juvenile proceedings for abuse, neglect, and dependency, in N.C. Gen. Stat. § 7B-100. Those purposes are:

(1) To provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents;

(2) To develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the juvenile, and the strengths and weaknesses of the family.

(3) To provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence; and

(4) To provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents.

(5) To provide standards, consistent with the Adoption and Safe Families Act of 1997, P.L. 105-89, for ensuring that the best interests of the juvenile are of paramount consideration by the court and that when it is not in the juvenile's best interest to be returned home,

the juvenile will be placed in a safe, permanent home within a reasonable amount of time.

N.C. Gen. Stat. § 7B-100 (2011).

The tension between the cases mentioned above hinges on whether the dismissal was with prejudice or without and the factual context of the particular case. In the juvenile context, the distinction between a dismissal with prejudice and without prejudice is largely immaterial. No judgment or order is ever truly "final" in the juvenile context if the trial court retains jurisdiction, at least until the juvenile attains the age of majority. Indeed, a voluntary dismissal, assuming *arguendo* it is effective, is more final in this context than any order on the merits, in that the court cannot act in the matter after a voluntary dismissal, *In re O.S.*, 175 N.C. App. at 749, 625 S.E.2d at 609, but can after a disposition or custody order. Therefore, we hold that for purposes of a juvenile petition, a voluntary dismissal is a "proceeding" that may be the subject of a motion under Rule 60(b) and that the trial court correctly concluded that a Rule 60(b) motion was the proper avenue to challenge BCDSS's voluntary dismissal.

## IV. DSS Authority to Voluntarily Dismiss Juvenile Petition

[3] We now turn to the central issue on appeal: Can DSS voluntarily dismiss a petition after it is filed and before an adjudicatory hearing? The GAL argues that BCDSS did not have authority to voluntarily dismiss the petition because the jurisdiction of the district court can only be terminated by one of the methods mentioned in N.C. Gen. Stat. § 7B-200 (2011) and that the trial court erred and abused its discretion in concluding otherwise. For the following reasons, we affirm the trial court's order.

### A. Standard of Review

"Appellate review of an order ruling on a Rule 60(b) motion is limited to whether the trial court abused its discretion." *Bradley*, 206 N.C. App. at 254, 697 S.E.2d at 426. "An abuse of discretion occurs only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. McCallum*, 187 N.C. App. 628, 633, 653 S.E.2d 915, 919 (2007) (citation and quotation marks omitted). "By definition, a court abuses its discretion when it makes an error of law." *United States v. Ebersole*, 411 F.3d 517, 526 (4th Cir. 2005) (citation and quotation marks omitted).

The only question presented in this appeal is whether the trial court erred in concluding that BCDSS had the legal authority to voluntarily

**IN RE E.H.**

[227 N.C. App. 525 (2013)]

dismiss the juvenile petition once filed. Stated otherwise, we must decide whether Rule 41(a)(1)(i) of the Rules of Civil Procedure permits the voluntary dismissal of a juvenile petition. This question is purely one of law. It also appears to be an issue of first impression in North Carolina.

B. Analysis

In proceedings under the Juvenile Code, "the Rules of Civil Procedure apply only when they do not conflict with the Juvenile Code and only to the extent that the Rules advance the purposes of the legislature as expressed in the Juvenile Code." *In re L.O.K.*, 174 N.C. App. at 431, 621 S.E.2d at 240 (citations omitted). There is no statutory provision that clearly either permits or forbids DSS from voluntarily dismissing a juvenile petition, although the statutes do clearly set forth the authority of DSS to file a juvenile petition. N.C. Gen. Stat. § 7B-302 (2011).

The GAL primarily argues that allowing DSS to voluntarily dismiss a juvenile petition contravenes N.C. Gen. Stat. § 7B-201(a), which provides that "[w]hen the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." N.C. Gen. Stat. § 7B-201(a) (2011).

We disagree with the GAL's interpretation. This provision makes clear that a trial court has continuing jurisdiction over the juvenile to conduct periodic reviews, even after it enters an order that might be considered a final order on the merits in another context. *See, e.g., In re H.S.F.*, 177 N.C. App. 193, 199, 628 S.E.2d 416, 420 (2006) (holding that the trial court retained jurisdiction to conduct periodic reviews, even after it restored custody to a parent). Section 7B-201(a) does not address the power of county departments of social services, generally the only entity entitled to file juvenile petitions, to dismiss the petition once filed.[2]

The GAL also argues that allowing DSS to dismiss a petition "thwarts all of the duties of a Guardian ad litem and leaves juveniles unprotected." Under N.C. Gen. Stat. § 7B-601, the duties of the GAL in abuse, neglect, and dependency proceedings are premised on the existence of a juvenile petition. *See* N.C. Gen. Stat. § 7B-601(a) (2011) ("When in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem to represent the juvenile."). Although the role of the

---

2. The district attorney has the power to review a DSS director's determination not to file a petition and may instruct the director to file a petition. N.C. Gen. Stat. § 7B-306 (2011).

**IN RE E.H.**

[227 N.C. App. 525 (2013)]

GAL in juvenile proceedings is unquestionably important, that role does not include initiating a proceeding for abuse, neglect, and dependency. Had the legislature intended to allow the GAL to prosecute such claims independently, it could have authorized the GAL to file juvenile petitions. As it stands, the statutes place that responsibility on the county departments of social services.

Respondent-mother argues that permitting DSS to voluntarily dismiss petitions is contrary to the Juvenile Code in that the only provision in the Code that mentions voluntary dismissal is N.C. Gen. Stat. § 7B-308(b)(1).[3] That section applies when a "physician or administrator of a hospital, clinic, or other medical facility" suspects that they are treating an abused juvenile. N.C. Gen. Stat. § 7B-308(a)(2011). In that situation, the physician or administrator must report the suspected abuse to the director of social services. *Id.* Where it is the opinion of the treating physician that certain treatment is necessary for the juvenile, the parent refuses, and the department files a petition and seeks a nonsecure custody order, the petition and nonsecure custody order "shall come on for hearing under the regular provisions of this Subchapter unless the director and the certifying physician together voluntarily dismiss the petition." N.C. Gen. Stat. § 7B-308(b)(1). Respondent-mother argues that the mention of voluntary dismissal in this subsection shows that voluntary dismissal only applies to petitions brought under that subsection and implies that they are not otherwise permissible.

Instead of supporting mother's argument, this provision actually undermines it. N.C. Gen. Stat. § 7B-308(b)(1) recognizes that a two entities which have statutory authority to initiate the proceeding addressing medical need—DSS and the certifying physician—also have the authority to dismiss the petition, if both are in agreement that dismissal is warranted. For example, if the parent consents to and provides the needed medical care upon filing of the petition and there are no other issues to be addressed, DSS and the certifying physician may determine that there is no need to proceed with a hearing upon the petition and dismiss it.

---

3. At the hearing on the GAL's Rule 60(b) motion, respondent-mother argued in favor of the motion, but did not formally join in the motion. She also did not file a notice of appeal from the order denying the motion. On appeal, she again argues in favor of the motion and contends that we should reverse the trial court's order. Thus, although she has labeled herself an appellee, she effectively is arguing as an appellant. Although we would normally not consider the arguments of an appellant who did not file notice of appeal, given the novel procedural posture and the fact that she is requesting the same relief as the GAL, we will consider her arguments.

**IN RE E.H.**

[227 N.C. App. 525 (2013)]

We believe the proper inference is that drawn by BCDSS-that normally only DSS needs to consent to a voluntary dismissal, but that in the medical need context, the physician must also consent. The physician plays a unique role under the provisions of § 7B-308. It is in that context alone that the physician gets to decide along with the director of social services whether to voluntarily dismiss a petition. Thus, section 7B-308(b)(1) operates as a limit on the general power of DSS to voluntarily dismiss petitions, not as a limited grant of power.

Permitting DSS to voluntarily dismiss a juvenile petition under Rule 41 does not contradict the continuing jurisdiction provision of N.C. Gen. Stat. § 7B-201(a), the GAL provisions in N.C. Gen. Stat. § 7B-601, or the medical treatment provisions under N.C. Gen. Stat. § 7B-308. Therefore, we must next consider whether voluntary dismissals advance the purposes of the Juvenile Code.

There are two cases in which this Court has discussed the effects of a voluntary dismissal of petitions under the Juvenile Code. In *L.O.K.*, we decided that a party is not precluded from filing a subsequent petition to terminate parental rights after a voluntary dismissal, even if that dismissal was taken after the petitioner rested its case. *In re L.O.K.*, 174 N.C. App. at 432-33, 621 S.E.2d at 240-41. We concluded that preventing a petitioner from filing a subsequent petition after dismissal would be contrary to the need for a hearing under the Juvenile Code and "would be antithetical to a child's best interests because it would result in no permanent plan of care for the child." We did not, however, address the propriety of a voluntary dismissal.

In *In re O.S.*, we held that the voluntary dismissal of a juvenile petition deprived the trial court of jurisdiction to enter a permanent custody order. *In re O.S.*, 175 N.C. App. at 749, 625 S.E.2d at 609. Although we did not address whether DSS had authority to dismiss the petition to terminate parental rights, as that issue was apparently not argued, the voluntary dismissal of the petition in *O.S.* would have been void, and therefore of no legal effect, if DSS had no authority to dismiss the petition. *See Bradley*, 206 N.C. App. at 254, 697 S.E.2d at 426. Although both of these cases touched on the issue before us, neither directly addressed it.

BCDSS contends that allowing it to dismiss juvenile petitions advances the purposes of the Juvenile Code. It argues that allowing voluntary dismissal protects the rights of juveniles and parents by allowing the disposition of petitions if DSS realizes prior to an adjudicatory hearing that there is insufficient evidence to support the allegations, prevents the wasting of limited court resources by requiring unnecessary

**IN RE E.H.**

[227 N.C. App. 525 (2013)]

hearings, and "prevent[s] the unnecessary or inappropriate separation of juveniles from their parents." N.C. Gen. Stat. § 7B-100(4) (2011). Additionally, BCDSS argues that foreclosing voluntary dismissal could have a chilling effect on the filing of juvenile petitions. We agree.

DSS is charged by statute with investigating allegations of abuse, neglect, and dependency, and filing a juvenile petition where appropriate. *See generally* N.C. Gen. Stat. § 7B-302. Indeed, where DSS concludes that abuse or neglect did not occur prior to filing a juvenile petition, it does not have the power to invoke the jurisdiction of the court under N.C. Gen. Stat. §§ 7B-302(c) and (d). *In re S.D.A.*, 170 N.C. App. 354, 361, 612 S.E.2d 362, 366 (2005). If DSS initially concludes that there was abuse, neglect, or dependency, and files a petition, it "has the burden, at the adjudicatory hearing stage, to prove neglect and dependency by clear and convincing evidence." *In re Evans*, 81 N.C. App. 449, 452, 344 S.E.2d 325, 327 (1986) (citation omitted). Neither the GAL nor the parents of the juvenile can file a juvenile petition. Neither has any burden at the adjudication hearing. Only the district attorney has the power to review the decision of the director of social services not to file a juvenile petition if abuse, neglect, or dependency has been alleged. N.C. Gen. Stat. §§ 7B-305, 7B-306. The legislature has thus entrusted DSS with the duty to determine whether allegations of abuse, neglect, or dependency are credible and what action to take, subject to only limited review. Requiring the GAL or the parents to consent to a voluntary dismissal would impermissibly shift this responsibility away from DSS.

There are undoubtedly situations in which DSS receives what initially appear to be credible allegations, files a petition, and then discovers that the evidence underlying the allegations is so weak as to not merit proceeding. In that situation, it is appropriate for DSS to dismiss the petition. Doing so avoids unnecessary periods of family separation and unnecessary burdens on the juveniles and their family. It also allows DSS to devote its limited resources and staff to dealing with other abused, neglected, or dependent juveniles who need protection.

The GAL also argues that jurisdiction of the court can be terminated only by the court's order because this is the only way to protect the children. He argues that this case

> is unusual in that the parents disagree whether abuse has occurred and thus the respondent mother is willing to weigh in on the side of protecting the child. But if the appellees' argument is accepted, neither the mother nor child will have any opportunity to be heard in juvenile

court. For the child, who has no standing to bring a custody action, there would be no recourse whatsoever.

We disagree that this is an "unusual situation"; it would actually be more unusual for a father to agree with a mother's allegations that he has sexually abused a child.

We also disagree that the child is left without protection. Our statutes actually provide numerous avenues for protection of children from abuse. In the most serious situations, there is the possibility that any number of different criminal charges based upon abuse or neglect of a child will be lodged against the alleged abuser. In the civil context, even if the juvenile court no longer has jurisdiction over this particular proceeding, if BCDSS were to receive another report of abuse and were to determine that another petition should be filed, it can do so. In addition, a parent who believes the other parent is abusing a child has the option of to file a complaint seeking custody pursuant to N.C. Gen. Stat. § 50-13.1 (2011), including a motion for an emergency custody order if necessary to protect the child, see N.C. Gen. Stat. § 50-13.1(a), or to file a complaint seeking a domestic violence protective order under N.C. Gen. Stat. § 50B-1, in this case pursuant to 50B-1(a)(3). Although we express absolutely no opinion as to whether any such actions would be justified in this case, we simply note that our General Assembly has provided many different avenues for the protection of children from abuse, although not all avenues are necessarily open in every case.

Respondent-mother next seeks to analogize her claims to a counterclaim as might be filed in a non-juvenile proceeding under N.C. Gen. Stat. § 1A-1, Rule 13 (2011). She argues that the juveniles and the parents "have . . . necessarily asserted 'affirmative relief' when they are brought into the action," and DSS therefore cannot dismiss a petition without the consent of all parties. *See McCarley v. McCarley*, 289 N.C. 109, 112, 221 S.E.2d 490, 492 (1976) (noting that a plaintiff is not permitted to voluntarily dismiss his suit if "the defendant has set up some ground for affirmative relief or some right or advantage of the defendant has supervened, which he has the right to have settled and concluded in the action. If the defendant sets up a counterclaim arising out of the same transaction alleged in the plaintiff's complaint, the plaintiff cannot take a nonsuit without the consent of the defendant; but if it is an independent counterclaim, the plaintiff may elect to be nonsuited and allow the defendant to proceed with his claim." (citation and quotation marks omitted)). Affirmative relief is "that for which the defendant might maintain an action entirely independent of plaintiff's claim, and which he might proceed to establish and recover even if plaintiff abandoned his

cause of action." *Id.* at 113-14, 221 S.E.2d at 493-94 (citation, quotation marks, and ellipses omitted).

Respondent-mother's argument is unconvincing. Only DSS may file juvenile petitions and DSS must prove its case by a higher standard of proof than that used in other types of custody matters-clear and convincing evidence. Although the parents and the GAL may present evidence and argument, they have no right to seek affirmative relief in a juvenile proceeding like that available in a counterclaim. All authority of the trial court in this context arises out of the juvenile petition. See N.C. Gen. Stat. § 7B-200; *In re O.S.*, 175 N.C. App. at 749, 625 S.E.2d at 609. Respondent-mother points to no provisions for "counter-claims" or "cross-claims" by the parents or GAL and we have found no such statutory authority.

Those concerned that a juvenile might be abused, neglected, or dependent are entitled to report such concerns to the local DSS. If DSS determines that there is not sufficient evidence of abuse, neglect, or dependency to file a petition, and the concerned individual is a parent, as noted above, there are other types of legal actions that the parent can take to seek custody and/or protection of the child. No statute allows the GAL to file a juvenile petition independent of DSS. Therefore, neither the GAL nor the other parent can seek affirmative relief in the juvenile proceeding sufficient to function as a "counterclaim" that would deprive DSS of its ability to voluntarily dismiss a juvenile petition. *See McCarley*, 289 N.C. at 113-14, 221 S.E.2d at 493-94.

We conclude that permitting DSS to voluntarily dismiss juvenile petitions under N.C. Gen. Stat. § 1A-1, Rule 41, is not contrary to any provision of the Juvenile Code, but actually advances the purposes of the Code and is consistent with the unique authority and duties granted to DSS by the Juvenile Code. Because BCDSS had the legal authority prior to an adjudicatory hearing to voluntarily dismiss the petition it had filed, we hold that the trial court did not abuse its discretion in denying the GAL's Rule 60(b) motion.

V. Conclusion

In conclusion, we affirm the trial court's order denying the GAL's motion under Rule 60(b) challenging BCDSS's authority to voluntarily dismiss a juvenile petition. The trial court correctly concluded that it had jurisdiction to consider the GAL's Rule 60(b) motion, that Rule 60(b) was the proper avenue to challenge the voluntary dismissal, and that BCDSS had the authority to voluntarily dismiss the petition under N.C. Gen. Stat. § 1A-1, Rule 41(a)(1)(i). The application of Rule 41(a)(1)

(i) to the adjudication of abuse, neglect, and dependency advances the purposes of the Juvenile Code and is not contrary to any provisions of the Code.

AFFIRMED.

Judges HUNTER, Robert C. and ERVIN concur.

---

IN RE J.P. AND P.F.